IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORH CAROLINA
CHARLOTTE DIVISION
3:13CV231

| | | |
|---|---|---|
| ANDREW KASAIJA and YVONNE KASAIJA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| BANK OF AMERICA, N.A., successor in interest to BAC HOME LOANS SERVICING, LP, and U.S. BANK, N.A., Jointly and Severally, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon Defendants' Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion has been fully briefed and is ripe for disposition.

**Factual Background**

Plaintiffs' claims arise out of the servicing and subsequent foreclosure proceedings regarding a mortgage loan secured by the real property located at 7112 Stonehaven Drive, Marvin, North Carolina (the "Property"). (Am. Compl. ¶¶ 1, 5-6.) On or about November 29, 2006, Plaintiffs executed a promissory note (the "Note") payable to First Franklin, a Division of National City Bank ("First Franklin") in the amount of $557,900. (Am. Compl. ¶ 5.) The Note was secured by a deed of trust (the "Deed of Trust" and referred to collectively with the Note as the "Loan") against the Property. Plaintiffs assert that Defendant Bank of America, N.A. ("BANA ") is the current servicer of the Loan and that Defendant U.S. Bank is the entity claiming to be the successor trustee entitled to enforce the Deed of Trust. (Am. Compl. ¶¶ 2-3.)

1

Plaintiffs allege that they fell behind in their mortgage payments between April and July of 2009. (Am. Compl. ¶ 4). Plaintiffs allege that they spent nearly three years attempting to negotiate a loan modification with Defendants, during which Defendants failed to review their loan modification application in a timely manner, required them to continue sending the same documentation multiple times, falsely represented to them the status of their application, and ultimately wrongfully denied their application.

Despite Plaintiffs' good faith efforts to comply with all Defendants' requests regarding their loan modification application, on March 13, 2012, Defendants, through their substitute trustee, commenced a foreclosure action in Union County, North Carolina. The Clerk of the Union County Superior Court entered an order for sale in that action on January 31, 2013. (Am. Compl. ¶ 72.)[1] Plaintiffs appealed that order for sale, and the findings were affirmed on April 23, 2013. Plaintiffs allege that Defendants' actions induced Plaintiffs to forgo other remedies that may have been available to them to save their home and investment as well as their credit.

Plaintiffs allege that Defendants committed various common law and statutory violations in the course of servicing their Loan. According to Plaintiffs, the facts giving rise to this claim began in April 2009, when they called First Franklin to inquire about options to avoid foreclosure. (Am. Compl. ¶ 8.) Plaintiffs contend that they continued their communications with First Franklin over the course of the next year. (Am. Compl. ¶¶ 9-41.) On March 22, 2010, Plaintiffs were notified that their loan modification application under the Home Affordable Modification Program ("HAMP")[2] had been denied. (Am. Compl. ¶ 30.) This was the first of

---

[1] At the time of briefing of the motion, the house had yet to be sold in foreclosure.
[2] HAMP is a government program established pursuant to the Emergency Economic Stabilization Act of 2008 ("EESA"). *Villa v. Wells Fargo Bank, N.A.*, No. 10CV81 DMS (WVG), 2010 U.S. Dist. LEXIS 23741, at *1 (S.D. Cal. Mar. 15, 2010). HAMP was designed to promote loan modification and other foreclosure prevention services. *Id.* Under HAMP, a

three modification decline letters which Plaintiffs admit that they received. Despite having been denied for a modification, Plaintiffs continued their discussions with First Franklin over the course of the next several months. Plaintiffs allege that First Franklin then informed them that $3,750 would be a "good estimated amount" for a modified payment (Am. Compl. ¶ 40.) Plaintiffs chose to send in $3,750.00. (*Id.*)

Plaintiffs allege that they made two additional payments of $3,750.00 to First Franklin on August 28, 2010 and September 27, 2010. (Am. Compl. ¶¶ 41 and 43.) On October 1, 2010, BAC Home Loans Servicing (now BANA) became the loan servicer. (Am. Compl. ¶ 43.) Plaintiffs allege that they made two additional payments to BANA without any discussions whatsoever. (*Id.*) Plaintiffs further assert that, on November 29, 2010, a representative of BANA informed them that they needed to pay additional amounts "cure the arrears" and that their "approved modified payment" was $4,531.70. (Am. Compl. ¶ 44.) Plaintiffs assert that they sent payments of $1,150 to BANA on November 29, 2010 and December 4, 2010, presumably in an attempt to cure the arrearage. (*Id.*)

Plaintiffs also allegedly sent a payment of $4,950.00 to BANA on December 27, 2010. On December 28, 2012, Plaintiffs were notified in writing that they were still in default, which they do not deny, and that BAC intended to accelerate the debt. (*Id.* at 48.) On January 1, 2011, Plaintiffs sent another payment of $4,531.70 to BANA. (*Id.* at 49.) Plaintiffs admit that, on April

---

mortgage servicer enters into a contractual agreement with the Federal National Mortgage Association ("Fannie Mae") whereby the servicer agrees to perform loan modification and foreclosure prevention services in exchange for incentives from the Department of the Treasury. *Winn v. Chase Mortg. Servs.*, No. 2:10cv395, 2010 U.S. Dist. LEXIS 143041, at *5 (E.D. Va. Oct. 29, 2010); *see also Bourdelais v. JPMorgan Chase Bank*, N.A., 2011 U.S. Dist. LEXIS 35507, * 3-4 (E.D. Va. Apr. 1, 2011). The enactment of HAMP did not alter or limit a mortgage servicer's rights under the loan agreement, and it did not require servicers to modify any loans. *Taylor v. Ocwen Loan Servicing*, LLC, 2013 U.S. Dist. LEXIS 28396, * 9 and fn.1 (W.D.N.C. Mar. 1, 2013).

23, 2011, they again received a letter notifying them that their pending loan modification application had been denied. (Am. Compl. ¶ 56.) Nevertheless, Plaintiffs continued discussing possible loan modification options with BANA. To that end, Plaintiffs attended a BANA "Customer Outreach Event" in Charlotte, North Carolina on May 14, 2011. (Am. Compl. ¶ 62.) At the conclusion of the day's event, Plaintiffs unilaterally concluded that their modification request was approved. (Am. Compl. ¶ 62.) Nevertheless, Plaintiffs' modification application was again declined, and they admit that, on July 13, 2011, they received a letter stating such. (Am. Compl. ¶ 65.)

Plaintiffs also allege that Defendants "caused an individual of unknown identity, but whom Plaintiffs describe as 'menacing,' to enter upon [their] property, knock on the door and ring the doorbell until someone comes to the door, only to hang a yellow envelope on the door knob and walk away." (Am. Compl. ¶ 74.) They allege that the person "silently stare[s]" at their children through a window causing them to be afraid and causing their dog to bark. (Am. Compl. ¶ 76.)[3]

Based on these allegations, Plaintiffs plead five counts: (i) Breach of Implied Covenant of Good Faith and Fair Dealing Regarding Plaintiffs' Application for a Loan Modification; (ii) Intentional and Negligent Misrepresentation; (iii) Violation of the North Carolina Unfair and Deceptive Acts and Practices; (iv) Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"); and (v) Injunctive and Equitable Relief under N.C. Gen. Stat. § 45-21.24. Plaintiffs originally filed their Complaint in Union County Superior Court on March 4, 2013. Defendants timely removed the case to this Court, citing federal question jurisdiction based upon Plaintiff's claim pursuant to the FDCPA. Defendants assert that the Court may

---

[3] Defendants contend this person was a property inspector, and that Plaintiffs consented in the Deed of Trust to allow the lender to inspect the exterior portion of the property without advance notice. Plaintiffs' response does not dispute this contention.

properly exercise supplemental jurisdiction over the remaining state law claims. Defendant seeks to dismiss each of these claims for failure to state a claim upon which relief can be granted.

## Discussion

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). However, the court need not accept legal conclusions drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments. *Id*. The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007*); Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Moreover, "[t]hreadbare recitals of the elements of a case of action, supported by mere conclusory statements" are insufficient to survive a 12(b)(6) motion. *Ashcroft*, 129 S.Ct. at 1942.

The Court will first address Plaintiffs' federal statutory claim under the FDCPA. To state a claim under the FDCPA, the Plaintiffs must allege that (1) they are the object of collection activity arising from a consumer debt as defined by the FDCPA, (2) that the Defendants are "debt collectors" as defined by the FDCPA, and (3) that the Defendants engaged in an act or omission prohibited by the FDCPA. *See Boyter v. Bank of America Corp*., 2012 WL 5872793, *3 (W.D.N.C. October 9, 2012). The FDCPA defines a debt collector as "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* at *4 (quoting 15 U.S.A. § 1692a(6)). "It is well settled that provisions of the FDCPA generally apply only to debt collectors. . . .creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Scott v. Wells Fargo Home*

*Mortgage, Inc.*, 326 F. Supp. 2d 709, 717 (E.D.Va. 2003); *see also*, *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458 (11th Cir. 2009) ("several courts have held that an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA. . . .")  Additionally , under the FDCPA "[an] action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).

It appears to the Court that Plaintiffs fail to state a claim under the FDCPA as they have failed to make plausible allegations that the Defendants herein are "debt collectors" within the meaning of the FDCPA.  In addition, Plaintiffs' allegations fail to establish that their FDCPA was brought within one year of when the alleged violations occurred.  Plaintiffs' "trial plan payments" theory relates to conduct occurring in November 2009.  Moreover, Plaintiffs fail to allege the dates upon which Defendant's property inspector glowered at them through the window. [4]  For these reasons, Plaintiffs' FDCPA must be dismissed.

As Plaintiffs' federal claim fails to state a claim upon which relief can be granted, and the remaining claims are all state law claims, the Court declines to exercise supplemental jurisdiction over these remaining claims.  Accordingly, the remaining claims are hereby remanded back to the Superior Court of Union County.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss is hereby GRANTED IN PART and the remaining claims are hereby REMANDED to the Superior Court

---

[4] Moreover, Plaintiffs do not allege that the property inspector attempted to collect a debt as defined under the FDCPA.

of Union County for further proceedings.

Signed: December 6, 2013

Graham C. Mullen
United States District Judge